OSCN Found Document:Question Submitted by: The Honorable Mike Ritze, State Representative, District 80

OSCN navigation

Home

Courts

Court Dockets

Legal Research

Calendar

Help

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

Question Submitted by: The Honorable Mike Ritze, State Representative, District 802015 OK AG 2Decided: 05/04/2015Oklahoma Attorney General Opinions
Cite as: 2015 OK AG 2, __ __

¶0 This office has received your request for an official Attorney General
Opinion in which you ask, in effect, the following questions:1. Does the
State Treasurer have legal authority to keep information regarding unclaimed
property confidential under the Uniform Unclaimed Property Act or the Oklahoma
Open Records Act in response to a disclosure request?2. What information
obtained in the course of the State Treasurer's administration of the Uniform
Unclaimed Property Act may or must be kept confidential by law?3. Does the
State Treasurer have legal authority under the Uniform Unclaimed Property Act to
adopt administrative rules that define or limit the scope of confidentiality
accorded to information regarding unclaimed property?4. May the State
Treasurer share otherwise confidential information with other entities,
including States, in the course of administering the Uniform Unclaimed Property
Act?5. Does the payment of monies from the Unclaimed Property Fund affect
any confidentiality accorded to information related to those payments?
¶1 Because your request involves the Uniform Unclaimed Property Act ("UPA"),
60 O.S.2011 & Supp.2014, §§ 651-688, we briefly review the general purpose
of the Act to provide some context. The UPA provides a comprehensive system for
handling unclaimed property presumed to be abandoned. Under the statutory
framework, individuals or entities holding unclaimed property must file reports
on and transfer such property to the State after a defined length of time during
which the true owner has not claimed the property or had contact with the
holder. Id. §§ 661(A), 664(A). The periods of time run for several years
depending on the exact type of property. E.g., 60 O.S.2011, § 652(A) (setting a period of
five years for most types of bank accounts); id. § 657.4(A) (setting a
period of three years for intangible property such as securities).
¶2 Once transferred to the State, the Treasurer--statutorily tasked with
administration of the UPA, e.g., id. §§ 669, 672, 688(A)--must
take steps to safeguard the property (or its value after sale) and make it
available for the true owner, id. §§ 667(A), 668(A), 674(A). The UPA thus
protects property owners by providing an orderly system for them to recover
their property. Further, the Act ensures that the State and the general public
receive the benefits of such property rather than allowing the holder of such
property to reap windfalls from their customers. See 1 Am.Jur.2d
Abandoned, Lost, & Unclaimed Property § 44 (2015) (citing Douglas
Aircraft Co. v. Cranston, 374 P.2d 819, 821 (Cal. 1962)). Your questions
involve the State Treasurer's obligations of confidentiality regarding
information obtained as part of the administration of this system. We consider
each question in turn below.
I.
The State Treasurer Does Have Legal Authority Under the Uniform
Unclaimed Property Act and Under the Oklahoma Open Records Act to Keep Certain
Information Confidential, Including Holder Reports, Claimant Information,
Investigatory Reports, and any Other Information Required or Allowed to be Kept
Confidential by Law.
¶3 You first ask whether the State Treasurer has any authority to keep
records confidential and, if so, you also ask what information may be kept
confidential. Your question implicates the Oklahoma Open Records Act ("Open
Records Act"), 51 O.S.2011 &
Supp.2014, §§ 24A.1 -24A.30, which imposes a general requirement that the
"records" of "public bodies" and "public officials" must be made available to
individuals who request them. 51 O.S.2011, § 24A.5.
¶4 The Act's general disclosure requirement applies to the Treasurer. Under
the Open Records Act, records include "all documents" whether in the form of a
"book, paper, photograph, microfilm, data file[] created by or used with
computer software," and more so long as they are "created by, received by, under
the authority of, or coming into the custody, control or possession of public
officials." 51 O.S.Supp.2014, §
24A.3(1). "Public bod[ies]" include any "office, department, board, bureau,
commission, . . . executive office" or other listed entity "supported in whole
or in part by public funds or entrusted with the expenditure of public funds or
administering or operating public property," while "public official[s]" include
officials or employees of a public body. Id. § 24A.3(2), (4). The
Treasurer constitutes both a public body, id. § 24A.3(2) (defining public
body to include an "executive office . . . supported in whole or in part by
public funds"), and a public official, id. § 24A.3(4) (defining public
official to include "any official . . . of any public body").
¶5 Therefore, the Treasurer has a basic obligation to make disclosure
available for all records received by the Treasurer, all records under his or
her authority, and anything else otherwise satisfying the definition of "record"
under the Open Records Act.1 Despite the breadth of this basic disclosure
obligation, however, various provisions of the Open Records Act and the UPA
create exceptions to this general requirement and thereby authorize or even
require confidentiality. Thus, we conclude that the Treasurer does have the
authority to keep certain records confidential, and we discuss relevant
categories of confidential information below.
A. Several confidentiality and publication rules of the Open Records Act
create limitations on the State Treasurer's basic disclosure obligation.
¶6 To begin, the Open Records Act contains several exceptions that render its
disclosure requirements inapplicable to particular records. 51 O.S.2011, § 24A.5. One set of exceptions
includes records required by law to be kept confidential such as those protected
by unwaived state evidentiary privileges, the minutes of executive sessions held
by public bodies, driving records, and confidential medication information.
See id. § 24A.5(1) ("The [Act] . . . does not apply to records
specifically required by law to be kept confidential[.]"). The Open Records Act
also contains numerous provisions allowing public officials to keep otherwise
open records confidential. These provisions allow for the confidentiality of
some information found in public employee personnel records, 51 O.S.Supp.2014, § 24A.7(A), certain personal
notes of public officials, 51 O.S.2011, § 24A.9, and more,
51 O.S.2011 & Supp.2014, §§
24A.10a, 24A.11, 24A.13-24A.16a, 24A.19, 24A.22-24A.24, 24A.27-24A.28 (creating
various exceptions to the Act). The Open Records Act also contains a litigation
file and investigatory report provision, which allows authorized agency
attorneys and the Oklahoma Attorney General to keep litigation files and
investigatory reports confidential. 51 O.S.2011, § 24A.12. To the extent authorized
attorneys have such files on behalf of the Treasurer when administering the
unclaimed property system, this exception would apply.
B. Several confidentiality and publication rules of the UPA also create
limitations on the State Treasurer's basic disclosure obligation.
¶7 The UPA has several provisions affecting confidentiality and disclosure.
First, the UPA requires that the State Treasurer arrange for publication of a
list of the names and last known addresses of persons thought to have a claim to
property in the system. 60 O.S.2011, § 662. Because this list must
be published, the names and last known addresses of true owners clearly could
not be kept confidential. This information generally comes to the Treasurer
through reports filed by holders. The provision requiring holders to file
reports listing unclaimed property also requires that these reports remain
confidential except for the required-to-be-disclosed names and addresses.
60 O.S.Supp.2014, §
661(F). Thus, apart from the information that must be published, the reports
themselves must remain confidential.
¶8 Second, the UPA also provides for confidentiality of certain information
when a person files a claim in the unclaimed property system. The UPA grants the
Treasurer the following authority:

Any information submitted by a claimant . . . may be kept confidential by the
State Treasurer if it contains personal financial information of the claimant,
social security numbers, birth certificates . . . or any other document which is
confidential by statute if in the custody of another public agency or
person.
60 O.S.2011, § 674(A). Thus, a disclosure
request directed to records containing information about claimants could be
rejected by the Treasurer under this statutory provision.
¶9 While claimant information must generally be kept confidential, the UPA
also allows for the Treasurer to hold a hearing under the Administrative
Procedures Act to determine whether a claim should be paid. Id. § 675(A).
When the Treasurer holds such a hearing, the Treasurer must prepare a written
document with findings of fact and a decision as to the validity of all claims
filed and considered at the hearing. See id. The UPA specifically
provides that the written decision becomes a "public record," lifting
confidentiality requirements for any information included in the document.
Id. In other words, claimant information generally remains confidential
if it satisfies the statutory requirements, but it becomes public if included in
a written decision on the validity of a claim after an Administrative Procedures
Act hearing.
¶10 The UPA therefore contains several provisions dealing with
confidentiality and disclosure that constitute part of the relevant legal
framework for information requests. Still other legal provisions external to the
Open Records Act and the UPA may also apply.
C. The UPA and the Open Records Act both reference external law as a source
of confidentiality, which may further limit the State Treasurer's basic
disclosure obligation.
¶11 Other provisions of law could require that records be kept confidential.
The Open Records Act states that it does not apply to records where those
records are "specifically required by law to be kept confidential"; the
provision goes on to list examples of those laws requiring confidentiality,
including the evidentiary privilege exception mentioned above. 51 O.S.2011, § 24A.5(1). Further, as also
noted above, the UPA provides that information submitted by claimants "may be
kept confidential" in circumstances involving personal financial information,
social security numbers, or "any other document which is confidential by
statute if in the custody of another public agency or person."
60 O.S.2011, § 674 (emphasis added).
External provisions of law can thus prevent disclosure directly under the Open
Records Act or create an obligation of confidentiality under the UPA.
¶12 The Financial Privacy Act is one notable example of outside law. 6
O.S.2011, §§ 2201-2208. That Act requires certain financial institutions to
maintain the confidentiality of their customers' personal information in the
face of disclosure requests from "government authorit[ies]" except upon written
consent or a subpoena valid under the Act. Id. § 2203. The Oklahoma
Supreme Court has interpreted this confidentiality obligation to extend to
discovery in litigation between private parties because any judge ordering such
discovery would qualify as a "government authority." Alva State Bank &
Trust Co. v. Dayton, 1988 OK 44, ¶¶ 1, 5, 755 P.2d 635, 635-36. The Court has further determined
that this statute applies to financial institutions engaged in the unclaimed
property system: financial institutions must share information with the
Treasurer under the Act's provisions relating to regulatory oversight and,
without those provisions, the Treasurer would be required to obtain a subpoena.
See Lincoln Bank & Trust Co. v. Okla. Tax Comm'n, 1992 OK 22 ¶¶ 9-14, 827 P.2d 1314, 1319-22. Although information obtained
from covered financial institutions about presumably abandoned property would be
handled by the Treasurer in the manner described in Part I(B) above, that
information would remain confidential if the Act's abandonment requirements were
not satisfied. Id. ¶¶ 11-14, 13 n.38, 827 P.2d at 1321-22, 1321 n.38.
Hence, beyond the publication, disclosure, and confidentiality rules included in
the Open Records Act and the UPA, any provision of law like the Financial
Privacy Act could potentially trigger the Treasurer's confidentiality
obligations.
II.
The State Treasurer has Legal Authority Under the UPA to Adopt
Administrative Rules Clarifying Confidentiality Requirements Under the Act, but
the State Treasurer May Not Adopt any Rules Contrary to Law. This Opinion Does
Not Address Whether Current Regulations are Consistent With the UPA.
¶13 Your third question involves the authority of the State Treasurer to
create administrative rules that interact with the confidentiality requirements
mentioned above. The Treasurer clearly has authority under the UPA to enact
administrative rules "necessary . . . to carry out the provisions of the [UPA] .
. . in accordance with the Administrative Procedures Act." 60 O.S.2011, § 681. This rulemaking
authority allows the Treasurer to clarify confidentiality rules associated with
the administration of the unclaimed property system. In fact, the Treasurer has
exercised this authority in the context of confidentiality, see OAC
735:80-1-5, although this opinion does not address the validity of the
regulations currently enacted by the Treasurer.
¶14 However, we observe that the Treasurer does not have the authority to
enact administrative rules contrary to the Oklahoma statutes. In other words,
the Treasurer may adopt rules regarding confidentiality in order to resolve
ambiguity, but the Treasurer may not create confidentiality where none otherwise
exists. A clarifying interpretation could be entitled to the "highest respect
from the courts" if such a rule becomes the subject of litigation, but any
interpretation by the Treasurer "must [be] reasonable and not clearly wrong."
Indep. Fin. Inst. v. Clark, 1999 OK 43, ¶ 13, 990 P.2d 845, 851. One unreasonable interpretation of
the UPA's confidentiality provisions would be to contravene a clear, binding
provision of law. Hence, the Treasurer can clarify or define the confidentiality
and disclosure rules governing his or her administration of the UPA, but the
Treasurer may not contravene clear, binding law. This opinion does not address
the validity of the Treasurer's current regulations.
III.
The State Treasurer has Legal Authority Under the UPA to Share
Otherwise Confidential Information in Very Limited Circumstances Such as With
Other States.
¶15 Your fourth question asks whether, notwithstanding an otherwise binding
confidentiality obligation, the State Treasurer may share information with other
entities, including other States, in order to properly administer the UPA. We
first note that the Act must allow disclosure to persons outside the Treasurer's
office as a matter of common sense lest the Act be reduced to a dead letter. As
the Oklahoma Supreme Court has noted, a "statute will be given a reasonable and
sensible construction: one that will reconcile its provisions and avoid
inconsistencies and absurdities." City of Jenks v. Stone,
2014 OK 11, ¶ 15, 321 P.3d 179, 183. For example, the Treasurer may have
to engage with holders concerning otherwise confidential information as part of
examinations, see 60 O.S.2011, § 678; the Treasurer may need
to communicate otherwise confidential information to claimants as part of the
process of determining whether to make payments, see id. §§ 674,
675; the Treasurer may need to disclose information for the sake of enforcing
provisions or rights in court, see, e.g., id. § 679(A); and the Treasurer
may have to share confidential information with an attorney when receiving
services from an attorney not employed within the Treasurer's own office.
¶16 Second, the Act also allows the Treasurer to make agreements to exchange
information with other States' unclaimed property administrators in order to
ensure that the proper government takes custody of unclaimed property.
Id. § 683.1(A). The UPA itself contains provisions regarding which States
should take custody of property, id. § 684.1(A). Therefore, sharing
information with other States is crucial to the Act's effectiveness.
Additionally, according to the United States Supreme Court, federal law preempts
state law when a determination of custodial taking of unclaimed property between
States must be made-resolving serious past controversies between States and
raising the importance of proper channels of communication between States.
See Am. Petrofina Co. v. Nance, 697 F.Supp. 1183, 1187-88 (W.D. Okla.
1986) (citing Texas v. New Jersey, 379 U.S. 674 (1965)) (striking down
Oklahoma's provisions governing priority as preempted by federal law). The
Legislature thus had important reasons for ensuring that the Treasurer had the
authority to share information with other States.
¶17 Given the breadth of confidentiality for holder reports and claimant
information discussed above, it would also be an untenable reading of the
statute if all of the normal rules of confidentiality applied: the Treasurer
would essentially only be able to share with other States the name and last
known address of an owner. This would not fulfill the objectives of information
sharing in ensuring that the appropriate State receives custody of unclaimed
property. The Treasurer can, therefore, share otherwise confidential information
with other States pursuant to a valid agreement under the Act.
¶18 In light of the above considerations, the Treasurer does have the
authority to share otherwise confidential information with a very narrow class
of other parties. The Treasurer may communicate information to parties
necessarily included in a reasonable application of the UPA, including the
agency's attorneys and those parties who submit information in the first place.
Other persons making requests would not be entitled to information under the
Act's confidentiality obligations. Further, the Treasurer has the authority to
share otherwise confidential information with other States' unclaimed property
administrators.
IV.
The Payment of Monies From the Unclaimed Property Fund Does not
Affect the Requirement of Confidentiality That has Attached to Information
Related to the Basis For Such Payments, But a Hearing on the Validity of a Claim
Does Result in a Decision Deemed a Public Record.
¶19 Your fifth and last question asks whether a payment from the Unclaimed
Property Fund extinguishes confidentiality requirements attached to information
providing the basis for payment. In some circumstances, the decision to pay a
claim may coincide with circumstances requiring the extinguishment of
confidentiality obligations, but in other circumstances it would not.
Specifically, as noted above, the Treasurer may hold a hearing
under the Administrative Procedures Act to determine whether a claim against
unclaimed property should be considered valid. 60 O.S.2011, § 675(A). The UPA requires that
a written decision be prepared after such hearings, and these decisions must
become public records--they are no longer confidential. Id. But other
information about the claimant not included in the written decision does not
become public under the Act. See id. Further, no provision of law
otherwise requires disclosure of the confidential information obtained from or
about a claimant just because that claimant has had his/her property returned to
him/her. Thus, if the Treasurer does not hold a hearing on the validity of the
claim, nothing extinguishes the confidentiality attaching to a claimant's
information even if the Treasurer pays the claim.
V.Conclusion
¶20 We have discussed the Uniform Unclaimed Property Act, the Oklahoma Open
Records Act, and other provisions of law related to your questions about
confidentiality in the administration of the unclaimed property system. These
provisions of law create a system that thoroughly protects the confidentiality
of personal information while publishing the name and last known address of the
true owners of property in order for them to have notice of the existence of
their claims.

¶21 It is, therefore, the official Opinion of the Attorney General that:
1. The State Treasurer has legal authority under the Uniform Unclaimed
Property Act, 60 O.S.2011 & Supp.2014, §§ 651-688, and under the Oklahoma
Open Records Act, 51 O.S.2011 & Supp.2014, §§
24A.1-24A.30, to keep certain information confidential.
2. The State Treasurer has the authority to maintain the confidentiality of
holder reports, 60 O.S.Supp.2014, § 661(F), certain claimant
information, id. § 674(A), litigation files and investigatory reports,
51 O.S.2011, §
24A.12, and any other information where confidentiality would be allowed or
required by law, id. § 24A.5.
3. The State Treasurer has legal authority under the Uniform Unclaimed
Property Act to adopt administrative rules clarifying confidentiality
requirements under the Act, 60 O.S.2011, § 681, but the State Treasurer
may not adopt any rules contrary to law. This Opinion does not address whether
current regulations are consistent with the Uniform Unclaimed Property Act.
4. The State Treasurer has legal authority under the Uniform Unclaimed
Property Act to share otherwise confidential information in very limited
circumstances, such as with other States. E.g., 60 O.S.2011, § 683.1.
5. The payment of monies from the Unclaimed Property Fund does not affect the
requirement of confidentiality that attaches to information related to the basis
for such payments, but a hearing on the validity of a claim results in a
decision deemed a public record. 60 O.S.2011, § 675(A).
E. SCOTT PRUITTAttorney General of Oklahoma
JARED HAINESAssistant Solicitor General
FOOTNOTES
1 The Open Records Act may
not have always so straightforwardly applied to the administration of the UPA.
In Tulsa Tribune Co. v. Okla. Horse Racing Comm'n, 1986 OK 24, 735 P.2d 548, the Oklahoma Supreme Court interpreted
the Open Records Act to require individuals whose information would be subject
to release to have an opportunity to object that such a disclosure would invade
the individual's privacy or damage the individual's commercial interests.
Id., 1986 OK at ¶¶ 12-15, 735 P.2d at 555. The Court subsequently applied the
Tulsa Tribune holding to the UPA. Merrill v. Okla. Tax Comm'n,
1992 OK 53, ¶¶ 1-4, 831 P.2d 634, 640-41. However, the Tulsa Tribune
interpretation was superseded by statute. Okla. Pub. Emp. Ass'n v. State
ex rel. Okla. Office of Pers. Mgmt., 2011 OK 68, ¶ 4 n.5, 267 P.3d 838, 842 n.5 (citing City of Lawton v.
Moore, 1993 OK
168, 868 P.2d
690). Tulsa Tribune thus has no bearing on the UPA
today.

Citationizer© Summary of Documents Citing This Document

Cite
Name
Level

None Found.

Citationizer: Table of Authority

Cite
Name
Level

Oklahoma Supreme Court Cases
 CiteNameLevel

 1988 OK 44, 755 P.2d 635, 59 OBJ 1159, Alva State Bank and Trust Co. v. DaytonDiscussed
 1992 OK 22, 827 P.2d 1314, 62 OBJ 3115, Lincoln Bank and Trust Co. v. Oklahoma Tax Com'nDiscussed
 1992 OK 53, 831 P.2d 634, 63 OBJ 1291, Merrill v. Oklahoma Tax Com'nDiscussed
 1993 OK 168, 868 P.2d 690, 65 OBJ 55, City of Lawton v. MooreDiscussed
 2011 OK 68, 267 P.3d 838, OKLA. PUBLIC EMPLOYEES ASSOC. v. STATE ex rel. OKLA. OFFICE OF PERSONNEL MANAGEMENTDiscussed
 2014 OK 11, 321 P.3d 179, CITY OF JENKS v. STONEDiscussed
 1999 OK 43, 990 P.2d 845, 70 OBJ 1560, Independent Finance Institute v. ClarkDiscussed
 1986 OK 24, 735 P.2d 548, 57 OBJ 1323, Tulsa Tribune Co. v. Oklahoma Horse Racing Com'nDiscussed
Title 51. Officers
 CiteNameLevel

 51 O.S. 24A.3, DefinitionsCited
 51 O.S. 24A.1, Short TitleDiscussed
 51 O.S. 24A.5, Open and Confidential RecordsDiscussed at Length
 51 O.S. 24A.7, Confidential Personnel Records of Public BodyCited
 51 O.S. 24A.9, Confidential Personal Notes and Personally Created Materials of Public Official Making RecommendationCited
 51 O.S. 24A.10a, Confidential Market Research and Marketing PlansCited
 51 O.S. 24A.12, Confidential Litigation Files and Investigatory ReportsDiscussed
Title 60. Property
 CiteNameLevel

 60 O.S. 652, Property Held by Banking or Financial OrganizationsCited
 60 O.S. 661, Report of Abandoned PropertyDiscussed
 60 O.S. 662, Notice and Publication of Lists of Abandoned PropertyCited
 60 O.S. 674, Claim of Interest in Abandoned PropertyDiscussed
 60 O.S. 675, Determination of Claims - Payment - Claims Against Mineral Owner's FundDiscussed
 60 O.S. 678, Failure to Report Property - Examination of RecordsCited
 60 O.S. 681, Rules and Regulations - Adoption by CommissionDiscussed
 60 O.S. 683.1, Agreements to Exchange InformationCited